### R. M. ROBINSON'S TRUSTEE *v.* JEPTHA PINNELL.

**Assignments for Benefit of Creditors—Right as Between Creditors and Partner of the Insolvent.**

Where R. conveyed his property for the benefit of his creditors, property acquired by R. while unlawfully assuming to act as agent for the United States Treasury in seizing the property of belligerents during the civil war, belongs to the creditors of R. rather than to P. who was a partner of R. in such illegal business, of which, under a compromise agreement between them, P. was entitled to a certain part of the property so wrongfully taken.

**War—Tort Feasors.**

The facts were held not to show that persons who had seized the property of belligerent enemies of the government during the civil war, were agents or sub-agents of the United States Treasury in collecting such property, but that such persons were tort feasors and trespassers.

APPEAL FROM GARRARD CIRCUIT COURT.

December 18, 1873.

OPINION BY JUDGE PRYOR:

R. M. Robinson conveyed to George Dunlap his property in trust for the benefit of his creditors, and the latter filed a petition in equity for the settlement of his accounts as trustee, and a distribution of the proceeds of the trust property between the creditors. The claim now in controversy originated from a partnership alleged to have existed between Robinson and the appellee, in gathering up and taking possession of the abandoned cotton in the confederate

states during the war. An act of congress, approved in March, 1863, conferred upon the secretary of the treasury the power to appoint agents to collect abandoned property in the states in rebellion. The appellee and appellant seem to have been located at or near Milliken's Bend, in the state of Louisiana, and both engaged in the business of searching for that cotton. Both claimed the sole right to operate in this particular locality by contract with government agents, but claimed to have derived their power from different agencies. The controversy as to their respective claims was compromised, as is shown, by the appellant taking two-fifths of the one-fourth of what was captured or seized, and Robinson three-fifths of this one-fourth. Whether the government or its agents got the other three-fourths does not appear. Nor is it shown that these parties, who were acting as agents of the government, had any authority whatever to authorize this seizure and confiscation, or that they were even agents with any power whatever with reference to the cotton. It is true they all claimed to be agents and empowered to take control of the cotton, as it was taken and delivered to them by their sub-agents; but there is an entire failure of proof as to the existence of the agency or the power to make such contracts as is shown were made by them with Robinson and Pinnell.

Both litigants are asserting a claim to the proceeds of property belonging to third parties, and were wrongdoers as well as trespassers, in taking it from the lawful owner, whether that owner be the one holding the legal title to the premises on which it was found, or the government of the United States. The partnership is shown to exist, but in property that they acquired possession of without right, if not as trespassers; and although Robinson may have promised to pay over to the appellee his illgotten gains, still the chancellor would hesitate before he would exact the performance of such a promise, even as between the parties. In this case the trustee is representing not only Robinson, but the creditors of Robinson, who are entitled to this fund. It is for their benefit the trust was made. This beneficial interest they are entitled to, and no court of equity would permit such a claim as this to swallow up the estate, to the exclusion of those who are *bona fide* creditors.

This is really a contest between the real creditors of Robinson and the appellee, who is attempting to make himself a creditor, by

reason of the seizure, without right, by Robinson and himself, of property that belonged to another. If those who originally owned the property are not entitled to the proceeds, then it belongs to the government, and neither the one or the other can assert a claim to its value as against the trustee. It does not appear how this agent, Field, derived the right to confiscate this property, and by contract give to appellee and Robinson the one-fourth of it. If he was an agent he had no power to dispose of it; and from the whole proof the conclusion is irresistible that these parties were assuming the right to convert to their own use, without reference to the claims of the true owners or the government, all the cotton within their reach. One nation at war with another may seize and confiscate the private property of the enemy; but in this case private property is made the subject of private plunder, and can hardly be said to be within the rule.

The appellee, when attempting to gather up cotton on the territory claimed by Pinnell, professed to have authority by contract with Yeatman, who says that he was an assistant or agent of the treasury department. The deposition of Yeatman is taken, and no contract proven or authority given by him to Robinson to act as a sub-agent. He says that Robinson was acting as a government agent, and so might be said of all who were appropriating the property of the citizen, as the government army advanced within the southern states. The evidence also shows that the action of some of these alleged commissioners, with reference to this property, was inquired into by the government; whether for the reason that they were acting without authority or had violated some duty connected with this position does not appear. There is, however, in all the evidence, a want of authority on the part of these litigants to appropriate this property either to their own use or that of the government, and their promise to act is vested solely from what may be implied from the facts established.

We think these facts do not authorize the conclusions that they were conferred with the power to seize this property either as the government agents, or any of its sub-agents. With the right of property vested in Robinson in a legitimate mode, the proof establishes the partnership and the right of the appellee to an interest in it; but when this litigation is over that which he lays either to the original owner or the government, by reason of that owner hav-

ing been a belligerent enemy, the chancellor will not, after such an unlawful appropriation, disturb the rights of bona fide creditors, to advance the interest of those whose only claim is based upon a tort in taking that which never belonged to them.

The order confirming the settlement is not final, either with or without exceptions. The last order is final for the reason that the appellee's claim is not only adjudged to be valid, but there is a judgment against the trustee directing the payment of the money. The judgment of the court below is reversed and cause remanded with directions to render a judgment rejecting appellee's claim.

*Dunlap, for appellant.*

*McKee, Hopper, Donham, Foraker, for appellee.*